**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICOLE HICKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| AMERICAN IMAGING MANAGEMENT, INC. ) | Judge: |
| d/b/a AIM Specialty Health; ) | |
| MONIQUE HOBBS, individually, ) | |
| ) | |
| Defendants. ) | |

**VERIFIED COMPLAINT
(TRIAL BY JURY DEMANDED)**

NOW COMES the Plaintiff, MICOLE HICKS, (hereinafter "MICOLE"), by and through her attorneys, Mirabella, Kincaid, Frederick & Mirabella, LLC, for her Verified Complaint against the Defendants, AMERICAN IMAGING MANAGEMENT, INC. d/b/a AIM Specialty Health, ("AIM"), and MONIQUE HOBBS, ("HOBBS"), individually, and states as follows:

**NATURE OF THE CASE**

1. This is an employment discrimination case brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*. MICOLE alleges that Defendant, AIM, unlawfully discriminated and retaliated against her on the basis of her religion. MICOLE also asserts a common law claim for tortious interference with employment relationship against individual Defendant, HOBBS, for her unlawful interference with MICOLE's employment relationship with AIM, which caused her damages. MICOLE seeks actual, compensatory, exemplary, and punitive damages, and an award of costs, expenses, and attorneys' fees in excess of $300,000.00 for Defendants' violations of the law.

## JURISDICTION & VENUE

2. Jurisdiction of this Court is appropriate pursuant to 28 U.S.C. § 1331, as this action involves federal questions arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, ("Title VII").

3. This Court has original jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's common law claims arising under Illinois law pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Judicial District under 28 U.S.C. § 1391 given that all of the discriminatory and unlawful practices alleged herein which give rise to Plaintiff's claims were committed within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent required under Title VII have been exhausted and performed by MICOLE prior to the filing of this complaint.

7. On June 28, 2018, MICOLE timely filed a Charge of Discrimination alleging Religious Discrimination and Retaliation with the U.S. Equal Employment Commission, ("EEOC"), Charge No. 440-2018-06051.

8. On February 6, 2019, the EEOC issued to MICOLE a Notice of Right to Sue. A copy of that Notice of Right to Sue along with her Charge of Discrimination is attached as Exhibit A.

9. MICOLE has timely filed this action within 90 days after receipt of the EEOC Notice of Right to Sue.

**PARTIES**

10. MICOLE is an individual presently residing in Tampa, Florida.

11. MICOLE, at all times relevant, was an "employee" of AIM, as that term is defined under Title VII. 42 U.S.C. § 2000e(f).

12. Defendant, AIM, is a corporation headquartered in Chicago, Illinois and is doing business at 2 Westbrook Corporate Drive, Westchester, Cook County, Illinois 60154.

13. AIM is an "employer" as that term is defined under Title VII. 42 U.S.C. § 2000e(b).

14. AIM provides specialty healthcare support services to healthcare providers and organizations and is not a religious organization.

15. Individual Defendant, HOBBS, is an individual residing in Plainfield, Will County, Illinois.

16. At all times relevant, HOBBS, was a Pastor at Kingdom Embassy Ministries, an Apostolic faith church, located in Joliet, Will County, Illinois.

**COUNT I – RELIGIOUS DISCRIMINATION**
[*Title VII, 42 U.S.C. § 2000e-2(a)*]
**(Johnson v. AIM)**

1-16. MICOLE incorporates Paragraphs 1 through 16 as Paragraphs 1 through 16 of Count I, as if fully set forth herein verbatim.

17. MICOLE is a Christian who practices the Apostolic denomination and is a protected person under Title VII.

18. Title VII makes it unlawful for an employer to discriminate on the basis of religion. 42 U.S.C. § 2000e-2(a).

19. Prior to obtaining employment with AIM in August, 2017, MICOLE regularly attended the Apostolic faith church, Kingdom Embassy Ministries, ("KEM"), located in Joliet, Illinois.

20. At all times relevant, KEM's pastor was Prophetess HOBBS.

21. Throughout the relevant timeframe, Antoinette Johnson-Wright, AIM's Director of Medical Management and KEM congregation member, routinely solicited KEM's congregation members for employment with AIM, with the assistance and guidance of HOBBS—a non-employee of AIM.

22. Antoinette Johnson-Wright had a pattern and practice of routinely consulting with HOBBS on all employment-related AIM personnel decisions, including whether to hire, fire, promote, or demote employees. In consulting with HOBBS about AIM's employees, Antoinette Johnson-Wright routinely held personnel meetings with HOBBS at the church and Antoinette Johnson-Wright took no employment-related actions without HOBBS' input and approval.

23. During the years 2016 through 2018, Antoinette Johnson-Wright hired well over 10-15 employees from KEM's congregation, all of which had been pre-approved by HOBBS.

24. On August 28, 2017, Antoinette Johnson-Wright, with HOBBS' blessing, hired MICOLE for a position with AIM as a Referral Service Assistant.

25. At all times during her employment with AIM, MICOLE reported to Managers, Shrese Williams, LeQuesha Hollister, Keorra Daniels, and Antoinette Johnson-Wright.

26. Managers, LeQuesha Hollister and Keorra Daniels, also attended KEM and were also previously solicited and hired by Antoinette Johnson-Wright, with HOBBS' prior blessing, for employment with AIM.

27. On or about March 3, 2018, Antoinette Johnson-Wright, with HOBBS' blessing, made the decision to promote MICOLE to the position of Performance Quality Auditor five months before MICOLE was eligible for promotion pursuant to AIM's 12-month promotion eligibility policy. MICOLE's promotion came with a significant pay increase, as well as a merit raise.

28. MICOLE was not the only person from KEM who Antoinette Johnson-Wright promoted to more senior positions prior to promotion eligibility. Antoinette Johnson-Wright had a pattern and practice of favoring KEM congregation members for early promotion to leadership positions, while overlooking long-term AIM employees who were not members of KEM. Examples include, but are not limited to, the following:

　　a. Antoinette Johnson-Wright promoted LeQuesha Hollister to Manager from Referral Service Assistant after being employed for only four months.

　　b. Antoinette Johnson-Wright promoted KEM congregation member, Melody Kennedy, from her position as Referral Service Assistant to Team Lead after less than one year of employment; whereas Antoinette Johnson-Wright overlooked Tanya Salam, a non-KEM congregation member employed by AIM for over 11 years, who was vying for the same position.

29. It was well known by AIM that Antoinette Johnson-Wright exhibited discriminatory favoritism to KEM members over non-KEM members because of their religious affiliation. For example, on AIM's Glassdoor.com and Indeed.com employee review pages, employees at the Westchester facility reporting to Antoinette Johnson-Wright, repeatedly complained:

　　a. On March 7, 2019, a Nurse Reviewer complained that AIM exhibited "favoritism."

b. On December 16, 2018, a Nurse Reviewer complained that the "promotions [are] unfair."

c. On December 10, 2018, an employee complained that there was "obvious favoritism."

d. On September 5, 2018, an employee complained about "poor management" and "favoritism."

e. On August 14, 2018, another employee complained, "You never move up in the company due to favoritism."

f. On August 2, 2018, a Registered Nurse complained that "promotions and management positions were based on who you know what what [sic] church you attend with a member a [sic] leadership."

g. On February 26, 2018, a Referral Specialist complained "Bad management, you have to be a favorite of one of the managers to be promoted. People who lacked the qualifications have been promoted over well qualified candidates."

h. On May 28, 2017, a Referral Service Assistant complained, "Advancement is not based on skills, but who you know. Managers, team leads and several people are friend [sic] outside of work."

30. In addition to the online reviews, numerous AIM employees had also repeatedly reported Antoinette Johnson-Wright's discriminatory behaviors to AIM's Human Resources, and AIM, at all times, was aware of and failed to take any corrective measures to stop Antoinette Johnson-Wright's discriminatory treatment towards her staff.

31. In addition to the blatant discriminatory favoritism, Antoinette Johnson-Wright in closed door personnel meetings at the church, in HOBBS' presence, would also repeatedly tell the

KEM congregation members who were on staff at AIM that they were not to speak with or befriend their non-KEM coworkers. During these meetings, Antoinette Johnson-Wright, Keorra Daniels, and LeQuesha Hollister would also repeatedly regard non-KEM staff and persons who left the ministry as "witches."

32. The idea that non-KEM staff and persons who left the ministry were considered "witches" was a concept often alluded to by HOBBS during her church services. For example, HOBBS routinely and regularly preached about a concept she termed as "Sonship." HOBBS' "Sonship" teachings primarily concerned how congregation members were expected to relate to the church. According to HOBBS, "Sonship" describes congregation members who are loyal and devout to the ministry to such an extent that they would never leave the ministry, would regularly pay their tithes and offerings, and would faithfully submit to and serve the vision of the church. Her teachings further warned that leaving the ministry would be frowned upon, given that the goal was to have all members come into "Sonship" with the ministry.

33. At the time MICOLE was promoted to Performance Quality Auditor in March, 2018, she had consistently met AIM's legitimate performance expectations and had never received any disciplinary action.

34. In and around April 17, 2018, MICOLE had a falling out with HOBBS, which caused MICOLE to leave the KEM ministry. In and around the same timeframe, MICOLE informed Antoinette Johnson-Wright that she had left the ministry.

35. Immediately after becoming aware that MICOLE had left the ministry, Antoinette Johnson-Wright began subjecting MICOLE to discriminatory terms and conditions of employment, as follows:

a. When Antoinette Johnson-Wright instructed MICOLE to perform tasks in her role as Performance Quality Auditor, Antoinette Johnson-Wright became aggressive and hostile towards MICOLE, often yelling at her and baselessly nitpicking her work. Antoinette Johnson-Wright had not exhibited these behaviors towards MICOLE prior to her leaving the KEM ministry.

b. In and around February, 2018, during a staff meeting at AIM, Antoinette Johnson-Wright instructed all staff that if they needed to get her attention about urgent matters, that they should use all CAPS in their email messages to her. On or about May 2, 2018, MICOLE, in accordance with Antoinette Johnson-Wright's previous instruction, sent a work-related email using all CAPS in the subject line. Notwithstanding the professional tone of MICOLE's email, Antoinette Johnson-Wright baselessly took extreme offense to MICOLE's use of capital letters and repeatedly and unnecessarily berated MICOLE for the incident in several back-to-back meetings.

c. Due to the increased and sudden hostility MICOLE had been experiencing from Antoinette Johnson-Wright, MICOLE, on or around May 11, 2018, attempted to obtain a transfer to AIM's facility located in Florida. MICOLE was contacted by an AIM recruiter to facilitate the transfer, and the recruiter advised MICOLE that she would need to get approval from Antoinette Johnson-Wright before the transfer would be allowed. Antoinette Johnson-Wright told MICOLE that she would not approve her request for transfer because MICOLE had "abandoned the ministry and our religion" and that she was "an embarrassment to the ministry and pastor."

    d. In a meeting on or about May 14, 2018, where Antoinette Johnson-Wright had, once again, attempted to berate MICOLE for her use of capital letters in the email from two weeks prior, the discussion became extremely hostile when MICOLE informed Antoinette Johnson-Wright, Keorra Daniels, and Shrese Williams that she felt she was being discriminated against because she left the church and that she intended to go to Human Resources. As MICOLE proceeded to leave the room to go to Human Resources, Antoinette Johnson-Wright blocked the door and Keorra Daniels aggressively pointed her finger in MICOLE's face yelling that she was a "sell-out" and threatening that she would make sure that MICOLE never worked for AIM again. After that meeting, MICOLE was sent home.

36. The following day, on May 15, 2018, MICOLE received a message instructing her to go to KEM to meet with HOBBS. Out of reverence for her faith and respect for the authority of the ministry, MICOLE went to KEM. On her arrival, she was met by Antoinette Johnson-Wright, HOBBS, Keorra Daniels, and LeQuesha Hollister. During that meeting, Antoinette Johnson-Wright instructed that MICOLE should "quietly resign," otherwise she would "ruin her career." MICOLE, fearful of Antoinette Johnson-Wright's threat, felt that she had no choice but to end her employment relationship with AIM.

37. AIM constructively discharged MICOLE on May 15, 2018.

38. AIM, despite knowledge of Antoinette Johnson-Wright's unlawful behaviors, at all times, failed to take any corrective measures to stop the discriminatory hostile work environment that Antoinette Johnson-Wright had subjected MICOLE and so many others to.

39. The ongoing pattern of religious discrimination creating a hostile work environment had the effect of, and did create, a hostile, intimidating, and abusive environment for MICOLE.

40. Similarly-situated KEM members who actively practiced the Apostolic faith, regularly attended the church, and remained faithful to the church and HOBBS were not treated in a discriminatory manner as MICOLE had been, and AIM, at all times, made employment-related decisions based on religious preference.

41. As a direct result of the unlawful religious discrimination undertaken by AIM, MICOLE suffered substantial damages, including but not limited to, lost wages, severe emotional distress, pain and suffering, humiliation, and damage to her professional and personal reputation.

WHEREFORE, Plaintiff, MICOLE HICKS, respectfully requests under Count I, the following relief against Defendant, AMERICAN IMAGING MANAGEMENT, INC. d/b/a AIM Specialty Health:

A. That this Court find that AIM has violated Title VII for unlawfully discriminating against MICOLE on the basis of her religion;

B. That this Court award compensation for back pay, front pay, the value of lost benefits, and interest thereon;

C. That this Court award compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of the religious discrimination by AIM;

D. That this Court award punitive damages to the maximum extent allowed under applicable law;

E. That this Court award MICOLE's reasonable attorneys' fees and costs; and,

F. That this Court award such further relief as is equitable and just.

## COUNT II – RETALIATION
### [*Title VII, 42 U.S.C. § 2000e-3(a)*]
### (Johnson v. AIM)

1-41. MICOLE incorporates Paragraphs 1 through 41 of Count I herein as Paragraphs 1 through 41 of Count II, as if fully set forth herein verbatim.

42. Title VII makes it unlawful for an employer to retaliate against an employee who has engaged in protected activity. 42 U.S.C. § 2000e-3(a).

43. On May 14, 2018, MICOLE engaged in protected activity by complaining to Antoinette Johnson-Wright and Keorra Daniels that she believed she was being unlawfully discriminated against based on her religion because she left the ministry.

44. As a direct result of MICOLE's complaints to AIM, AIM constructively discharged MICOLE on May 15, 2018.

45. As a direct result of the unlawful retaliation undertaken by AIM, MICOLE suffered substantial damages, including but not limited to, lost wages, severe emotional distress, pain and suffering, humiliation, and damage to her professional and personal reputation.

WHEREFORE, Plaintiff, MICOLE HICKS, respectfully requests under Count II, the following relief against Defendant, AMERICAN IMAGING MANAGEMENT, INC. d/b/a AIM Specialty Health:

A. That this Court find that AIM has violated Title VII for unlawfully retaliating against MICOLE for engaging in protected activity;

B. That this Court award compensation for back pay, front pay, the value of lost benefits, and interest thereon;

C. That this Court award compensatory damages for the severe humiliation, severe emotional stress, pain and suffering and physical distress caused as a direct and proximate result of AIM's retaliatory actions towards MICOLE;

D. That this Court award punitive damages to the maximum extent allowed under applicable law;

E. That this Court award MICOLE's reasonable attorneys' fees and costs; and,

F. That this Court award such further relief as is equitable and just.

**COUNT III – TORTIOUS INTERFERENCE WITH EMPLOYMENT RELATIONSHIP**
**(Johnson v. HOBBS)**

1-45. MICOLE incorporates Paragraphs 1 through 45 of Count II herein as Paragraphs 1 through 45 of this Count III, as if fully set forth herein verbatim.

46. Between the timeframe of August 28, 2017, and May 15, 2018, MICOLE was employed on an at-will basis by AIM.

47. On or about March 3, 2018, AIM promoted MICOLE to the position of Performance Quality Auditor and MICOLE, at all times, had a reasonable expectation that her employment at AIM would continue.

48. HOBBS, at all times, was aware that MICOLE was employed by AIM.

49. HOBBS has never been employed by AIM.

50. HOBBS intentionally and unjustifiably interfered with AIM's employment-related decisions regarding MICOLE when she influenced Antoinette Johnson-Wright to hire, promote, and constructively discharge MICOLE on May 15, 2018.

51. HOBBS' intentional interference into MICOLE's employment relationship with AIM was done with actual malice because on or about April 17, 2018, MICOLE had a falling out with HOBBS which significantly strained their relationship.

52. As a result of HOBBS' undue influence and interference into AIM's decision to constructively discharge MICOLE, MICOLE has suffered damages, including lost wages, severe emotional distress, pain and suffering, humiliation, and damage to her professional and personal reputation.

WHEREFORE, Plaintiff, MICOLE HICKS, respectfully requests under Count III, that this Court award her actual and compensatory damages, exemplary damages, as well as punitive damages against Defendant, MONIQUE HOBBS, and award all such other legal and equitable relief as deemed just and proper.

        Respectfully Submitted,

        By:   /s/ Jolianne S. Alexander
              JOLIANNE S. ALEXANDER (f/k/a Walters)
              One of Plaintiff's Attorneys

Jolianne S. Alexander (f/k/a Walters) (6314222)
Mirabella, Kincaid, Frederick & Mirabella, LLC
Attorney for MICOLE HICKS
1737 S. Naperville Rd. Suite 100
Wheaton, Illinois 60189
(630) 665-7300 Phone
(630) 665-7609 Fax
jolianne@mkfmlaw.com

## **VERIFICATION**

I, Micole Hicks, the Plaintiff in this matter, do hereby declare under penalty of perjury under the laws of the United States of America, that the foregoing Verified Complaint and its contents are true and correct.

_____
Micole Hicks

**ATTORNEY CERTIFICATION**

  Counsel for the Plaintiff affixes her signature hereto and on information and belief is of the opinion that the foregoing is true and accurate and conforms in good faith with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

              /s/ Jolianne S. Alexander
              JOLIANNE S. ALEXANDER (f/k/a Walters)
              One of Plaintiff's Attorneys

Jolianne S. Alexander (f/k/a Walters) (6314222)
Mirabella, Kincaid, Frederick & Mirabella, LLC
Attorney for MICOLE HICKS
1737 S. Naperville Rd. Suite 100
Wheaton, Illinois 60189
(630) 665-7300 Phone
(630) 665-7609 Fax
jolianne@mkfmlaw.com